IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

AMY SANDERS,

    Plaintiff,

v.      No. 14-1239

LAMAR JONES,

    Defendant.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Amy Sanders, brought this action on September 16, 2014, pursuant to 42 U.S.C. § 1983, against Defendant, Lamar Jones, alleging unreasonable seizure and malicious prosecution under the Fourth and Fourteenth Amendments, as well as state law claims for malicious prosecution and false arrest and imprisonment. (Docket Entry ("D.E.") 1.) Jones moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on August 26, 2015. (D.E. 27.) For the following reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.

I.     Facts

The following facts are undisputed. Defendant began working for Tennessee's 24th Judicial District Drug Take Force ("DTF") in October 2012. (D.E. 32-1 at 1.) The DTF used confidential informants ("CI") to identity individuals willing to sell and purchase drugs and recorded the deals with video surveillance. (*Id.*) In May of 2013, only one CI was used. (*Id.*)

1

During that time, the CI met a woman he said was named "Amy."[1] (*Id.* at 2.) The CI used the phone number "Amy" gave him to set up a drug transaction with her in the Decaturville (Tennessee) City Park. (*Id.*) Although Defendant followed the CI from a distance to the location, he was unable to see "Amy." (*Id.* at 4.) Jones did observe a silver Monte Carlo drive into the park, but no one, including the CI, was able to read the license plate. (*Id.* at 2.) The CI had been wired with a video camera to record the sale, while Jones and other DTF officers monitored the audio of the purchase. (*Id.* at 2, 4.) The female suspect never identified herself, and thus, after the deal concluded, the CI still only knew her as "Amy." (*Id.* at 4.)

Jones prepared a "report narrative," which was the document ultimately forwarded to the district attorney's office for preparation of an indictment. (*Id.*) He did not believe that the video revealed faces clearly enough to identify the suspect. (*Id.*) After obtaining a description of "Amy" from the CI, Jones asked other officers if they knew of anyone who looked like her. (*Id.* at 5.) One officer suggested it might be Amy Sanders. (*Id.*) Based upon this information, Jones printed Plaintiff's driver's license photo and showed it to the CI, who identified her as the suspect. (*Id.* at 6.) Before testifying at a grand jury hearing, the CI confirmed his identification a second time. (*Id.* at 7.) During the hearing, Jones restated what his report said and confirmed there was audio and video of the controlled purchase. (*Id.* at 9.) The grand jury returned a true bill against Sanders. (*Id.*) Following Plaintiff's arrest, her obtaining a bond, and hiring counsel, the State dismissed the charges against her due to misidentification. (*Id.*)

## II.    Legal Standard

Rule 56 provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[1] Defendant is unsure how the CI met "Amy" and was unfamiliar with her. (D.E. 32-1 at 2.)

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is to "view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party." *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 578 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). It is not to "weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251-52).

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citation omitted). The nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.* A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

III. Analysis

A. Section 1983 Malicious Prosecution Claim

In order to prevail on a claim under § 1983, a plaintiff "must establish that a person acting under color of state law deprived [her] of a right secured by the Constitution or laws of the United States." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)). Jones has invoked the defense of qualified immunity in response to Sanders' § 1983 claim.[2] "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). "Qualified immunity is intended to serve the public interest by permitting officials to take action with independence and without fear of consequences." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579 (6th Cir. 2003) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "Qualified immunity is a question of law, but where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Bazzi v. City of Dearborn*, 658 F.3d 598, 606 (6th Cir. 2011) (quoting *McKenna v. Edgell*, 617 F.3d 432, 437 (6th Cir. 2010)). "Thus, to the extent that there is disagreement about the facts . . . [the

---

[2]Defendant also asserts that he is shielded from liability by absolute immunity, arguing that this lawsuit arises solely out of his grand jury testimony. (D.E. 28 at 4.) However, Plaintiff contends that the alleged malicious prosecution claim is based upon the investigation—or lack thereof—that led to her indictment as well as what formed the basis of Defendant's grand jury testimony. While Jones is correct that grand jury and trial witnesses—both citizen and police officers alike—enjoy absolute immunity for their testimony, *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012), this suit is not only premised on Defendant's grand jury testimony, his absolute immunity argument is not dispositive of the claims presented. The immunity at issue in the instant matter is one of qualified immunity as the alleged grievances arose during police investigation. *See Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) ("Under the doctrine of qualified immunity, government officials performing discretionary functions . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

court] must review the evidence in the light most favorable to [the plaintiff], taking all inferences in his favor." *Id.*

"A defendant is entitled to qualified immunity unless the evidence, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011) (citing *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010)). The elements may be considered in any order. *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 765 n.11 (6th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). "Existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "This clearly established standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages." *Reichle*, 132 S. Ct. at 2093 (alterations omitted).

It is the position of the Defendant that he did not violate a constitutional right. "A § 1983 claim for malicious prosecution arises from the deprivation of rights secured by the Fourth Amendment." *Cheolas v. City of Harper Woods*, 467 F. App'x 374, 378 (6th Cir. 2012) (citing *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)). The Fourth Amendment protects "[t]he right of the people . . . against unreasonable . . . seizures[.]" U.S. Const. amend. IV. "The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (alterations omitted). In

order to prevail on a malicious prosecution claim under § 1983, the plaintiff much show that (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute"; (2) "there was a lack of probable cause for the criminal prosecution"; (3) "as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in . . . Fourth Amendment jurisprudence, apart from the initial seizure"; and (4) the criminal proceeding was "resolved in the plaintiff's favor." *Id.* at 308-09 (alterations omitted). Malice is not an element of the claim. *Id.* at 310.

A defendant must be accorded qualified immunity if "probable cause otherwise justified the prosecution decision." *Offineer v. Kelly*, 454 F. App'x 407, 415 (6th Cir. 2011). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Sykes*, 625 F.3d at 306. It is a well-established rule "that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F.3d 868 (6th Cir. 2002) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)); *see also Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (plaintiff's claim failed as he could not show an absence of probable cause because he was indicted by a proper grand jury). An exception, however, to this rule exists "where the indictment was obtained wrongfully by defendant police officers who knowingly present false testimony to the grand jury." *Cook v. McPherson*, 273 F. App'x 421, 424 (6th Cir. 2008) (citing *Hinchman v. Moore*, 312 F.3d 198, 202-03 (6th Cir.2002) (noting that a grand jury indictment does not foreclose a subsequent civil action for malicious prosecution where there is evidence of false statements or misrepresentations by law enforcement officials during the criminal proceeding). As such, "[p]olice officers cannot, in good faith, rely on a judicial determination of probable cause when

that determination was premised on an officer's own material misrepresentations to the court." *Sykes*, 625 F.3d at 312 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006)). "Such reliance is unreasonable, and detention of an individual pursuant to such deceptive practices violates the Fourth Amendment." *Gregory*, 444 F.3d at 758.

The Sixth Circuit "has held investigators subject to suit under § 1983 for making materially false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *Id.* Fourth Amendment rights are "implicated by ongoing, pretrial detention, deliberate obfuscation or omission of material facts by an investigator at the preliminary hearing," which makes the investigator's subsequent reliance on the hearing's conclusions unreasonable." *Id.* In order to establish that an officer defendant "acted in an objectively unreasonable fashion in continuing [the p]laintiff's detention, [the p]laintiff must present evidence that the officer[] (1) stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id.* (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)).

In *Webb v. United States*, the plaintiff sued the officer defendants for malicious prosecution after being arrested based on identification by a corrupt confidential informant ("CI"). 789 F.3d at 652-53. The CI claimed that the plaintiff was engaged in a drug deal with him. *Id.* at 652. In truth, the CI had brought a man who looked similar to the plaintiff to complete the drug deal and introduced the imposter as the plaintiff to one of the officers. *Id.* at 654. Although the imposter had some similar features to the plaintiff, there were noticeable differences. *Id.* The primary similarities were that the men were "white males with shaved heads and visible tattoos." *Id.* The plaintiff was indicted after the officer defendants testified that the plaintiff was the one who made the drug deals with the CI. *Id.* at 654-656. After the CI

eventually revealed he framed the plaintiff, the charges were dismissed. *Id.* at 656. The plaintiff then filed a complaint asserting among other claims, one for malicious prosecution. *Id.* at 657. The trial court granted summary judgment for the officers, holding that the plaintiff's malicious prosecution claim failed because the grand-jury indictment established probable cause to arrest and prosecute him. *Id.*

The Sixth Circuit reversed, emphasizing that although the general rule is that the finding of an indictment conclusively determines the existence of probable cause, "[a]n exception to this general rule applies when defendants knowingly or recklessly present false testimony to the grand jury to obtain the indictment." *Id.* at 660. The court reasoned that

> the jury could reasonably conclude that [the officer] knowingly or recklessly testified falsely against [the plaintiff] because he should have recognized that [imposter]—the stand-in [the CI] used for [the plaintiff] at the October 14 controlled buy—was not [the plaintiff]. [The defendant] maintains that he continues to believe that [the CI] introduced him to [the plaintiff]—rather than [the imposter]—on October 14, 2005, to conduct a controlled buy. For summary-judgment purposes, we must accept [the plaintiff]'s assertion that [the defendant] in fact met [the imposter], who was acting as a stand-in for [the plaintiff]. This means that, even though [the defendant]'s sole objective at the drug buy was to confirm the identity of the person seated next to [the CI], he misidentified [the imposter] as [the plaintiff]. Because he testified to the grand jury that he bought drugs from [the plaintiff], his testimony contained a false statement. The key question is whether [the imposter] so closely resembled [the plaintiff] that it was objectively reasonable for [the defendant] to have confused [the imposter] for [the plaintiff].

*Id.* at 661. Noting the differences between the plaintiff and the imposter, the Sixth Circuit held that "[t]he question of whether two individuals resemble one another is an issue of fact. . . . We must draw factual inferences in favor of [the plaintiff] unless the [d]efendants can show no reasonable jury could find that [the plaintiff] looked significantly differently different than [the imposter]." *Id.* at 662. As the evidence suggested noticeable differences existed, "it remain[ed] a genuine issue of material fact whether [the imposter] looked like [the plaintiff]," and summary

8

judgment was inappropriate on the issue of whether the officer defendants knowingly or recklessly presented false testimony to the grand jury. *Id.*

Additionally, the *Webb* court noted that "[a]bsent [the officer]'s allegedly false testimony, the only remaining evidence against [the plaintiff] was information supplied by [the CI]." *Id.* The court explained that while "[i]nformation from a [CI] who has been established as reliable can serve as the basis for probable cause," the officer defendants could not reasonably rely upon the provided information. *Id.* The defendants were aware of the fact that the CI "was arrested for cocaine possession, provided false tips, and stole money from the [d]efendants," thus making it unreasonable to rely upon the information without any corroboration. *Id.* The Sixth Circuit has noted in other instances that without independent corroboration, an officer cannot present to the grand jury evidence gleaned solely by confident informants who have not been proven as reliable. *See Mott v. Mayer*, 524 F. App'x 179, 188 (6th Cir. 2013) (noting that the trial court concluded that the grand jury's indictment did not establish probable cause as the officer's testimony "was based entirely upon unreliable, uncorroborated information" from a CI and that several of his statements were misleading or false); *see also Robertson v. Lucas*, 753 F.3d 606, 617 (6th Cir. 2014) (officer defendant was entitled to qualified immunity as he testified to the grand jury about the "host of corroborative procedures used in controlled buys," and the plaintiffs did not provide any evidence that the officer falsely testified about the independent corroboration of the CI's information about them); *United States v. Bryant*, 145 F. App'x 95, 97 (6th Cir. 2005) (information given by an unreliable informant was able to be utilized because the information was "sufficiently corroborated" by an officer).

Further, the Sixth Circuit has held that mistakenly identifying a suspect can rise to the level of deliberate indifference, thus defeating qualified immunity. *See id.*; *Gray v. Cuyahoga*

9

*Cnty. Sheriff's Dep't*, 150 F.3d 579, 582 (6th Cir. 1998). In *Gray*, the Sixth Circuit denied qualified immunity, holding that "in light of apparent differences between the suspect and the plaintiff, the principal question for the trier of fact will be whether [the jailers] acted with something akin to deliberate indifference in failing to ascertain that [the plaintiff] they had in custody was not the person wanted by [the] authorities." *Gray*, 150 F.3d at 582. When there is an instance of mistaken identity, it is the province of the jury to determine if it was "objectively reasonable" for the officer to believe that wrongfully arrested individual was the actual suspect. *See Webb*, 789 F.3d at 663. Summary judgment is not appropriate unless the officer defendants demonstrate through the evidence that they "undertook appropriate efforts to confirm [the plaintiff]'s identity in light of potential differences." *Id.* Without such evidence, "a jury could reasonably conclude that [the officer defendant]'s grand-jury testimony contained knowing or reckless falsehoods as to the identity of the person who [was wrongfully arrested], and therefore the grand-jury indictment against [the plaintiff] cannot be the basis for probable cause at summary judgment." *Id.*

In the instant matter, an indictment was obtained and a subsequent capias was issued for Plaintiff. (D.E. 32-1 at 9). The basis of the indictment was Defendant's testimony that Sanders was involved in the drug deal with the CI, who identified her. (*Id.* at 8-9.) However, the CI never obtained the full name of the woman from whom he bought drugs, although that was protocol for informants during deals; he just knew her as "Amy." (*Id.* at 4.) The transaction was recorded (D.E. 30-3 at 25), and although Jones was present in the area where it occurred, he did not see the suspect (*Id.* at 35). He did, however, observe a Monte Carlo arrive. (*Id.*) Defendant was aware this car belonged to Amanda Ramey, another woman who was eventually arrested

and indicted as a part of this drug investigation and who Jones knew.³ (*Id.* 51-52.) The phone number that the CI used to contact the suspect and set up the deal also belonged to Ramey. (*Id.*) Jones, however, failed to trace the phone number, which would have alerted him to this fact. (*Id.*)

The CI provided to Defendant after the drug transaction the following description of the suspect: "kind of short, long black hair, had tattoos . . . ." (*Id.* at 43, 45.) Not recognizing anyone with that identification, Defendant asked other officers if they had any idea who she was. (*Id.* at 45.) Deputy Rick Inman believed that Plaintiff fit the description. (*Id.* at 46.) At no point did Inman speak with the CI or ever review the videotape of the drug deal. (*Id.*) After speaking with Inman, Defendant printed a copy of Plaintiff's driver's license picture and showed it to the CI. (*Id.* at 25-26.) The CI identified the picture as the suspect and confirmed the identification again before the grand jury. (*Id.* at 26.) Defendant did not further investigate Plaintiff (*id.* at 60), nor did the CI purchase any other drugs from the female suspect (*Id.* at 52).

Although the drug deal was videotaped, Defendant claimed that the picture quality was poor, and that "it didn't show the faces clear enough." (*Id.* at 42.) However, during Defendant's deposition, Plaintiff's counsel took a screenshot of the suspect directly from the recording, and the following exchange took place:

> Q: As you sit here today, do you agree with me that, whether it be before or after this litigation began, the individual pictured in [the] video is not Amy Sanders?
>
> A: I agree with you.
>
> Q: And that video was within your control from the time it was made, from May 22nd, all the way up through the date of her indictment and beyond?
>
> A: Yes.

---

³Amanda Ramey is in fact Plaintiff's sister, and they were living together. (D.E. 30-3 at 53.)

11

> Q: Okay.
>
> A: I agree with the picture that you see. That's what I agree with.
>
> Q: The screenshot?
>
> A: Yeah, the screenshot.
>
> Q: You agree that does not depict Amy Sanders?
>
> A: I agree that does not depict Amy Sanders.

(*Id.* at 47-48.) Although Defendant reaffirmed his belief multiple times during this deposition that the videotaped suspect did not resemble Plaintiff, he argued that the CI's identification was credible and was an appropriate basis for his report and subsequent grand jury testimony. (*Id.* at 53, 54.) Jones conceded that he lacked "any other corroborative proof that [the suspect] was Amy Sanders" other than the CI's identification. (*Id.* at 60.) While the record does not delineate the differences in the appearances between the suspect and Plaintiff, the deposition testimony of Defendant indicates that after a close examination of the video, it was apparent Plaintiff was not the suspect.

As in *Webb*, the "question of whether two individuals resemble one another is an issue of fact. . . . [This Court] must draw factual inferences in favor of [the plaintiff] unless the Defendant[] can show no reasonable jury could find that [the plaintiff] looked significantly different than" the real suspect. *Webb*, 789 F.3d at 662. Here, Jones himself acknowledged upon a closer inspection of the footage that it was not Sanders who participated in the drug deal. Thus, the question becomes whether Defendant "acted with something akin to deliberate indifference in failing to ascertain that [the plaintiff] . . . was not the person wanted." *Gray*, 150 F.3d at 582. As this is a case of mistaken identity, the jury must determine if it was "objectively

reasonable" for the officer to believe that the arrested individual was the person sought. *See Webb*, 789 F.3d at 663. Because Defendant failed to establish that he undertook other efforts to confirm Plaintiff was the actual suspect, "a jury could reasonably conclude that [Jones]'s grand-jury testimony contained knowing or reckless falsehoods as to the identity of the person who sold [the CI] drugs." *See id*.

Defendant focused on the undisputed fact that a grand jury issued an indictment for Plaintiff's arrest, and argues, thus, probable cause is conclusively proven. (D.E. 28 at 5-6.) While he disputed Sanders' assertion that he knowingly provided false testimony during the grand jury proceeding (D.E. 32), Jones failed to address whether his lack of corroboration for the CI's identification could be considered reckless or rise to the level of deliberate indifference. *See Webb*, 789 F.3d at 663; *Gray*, 150 F.3d at 852. Additionally, he contends, the CI's identification constituted the required probable cause, and thus there was no Fourth Amendment violation despite Jones' failure to corroborate the information. (D.E. 28 at 9.) Defendant cites to *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000), for the proposition that "[w]hen a tip or information comes from a reliable source who has personally observed the criminal activity, police corroboration is not necessary." Although it is an accurate portrayal of the holding in *Allen*, the instant matter is wholly distinguishable. In *Allen*, the informant was "personally known to the detective who swore the affidavit, and who revealed the CI's name to the magistrate [during the procurement of a warrant]. The CI's reliability in criminal matters in which the detective was involved had extended over a five-year period." Further, the court emphasized, "the additional time thus added to the process by mandating an independent police investigation following a CI's contact would provide a further advantage to drug dealers' already highly mobile, hit-and-run operations." *Id.*

Here, Jones' relationship with the CI was substantially different. Defendant had never worked with the CI prior to this drug investigation, could not name more than one agency that the CI had previously worked for, and had no have personal knowledge of specific indictments or convictions attributable to the CI's controlled buys.[4] (D.E. 30-3 at 14-16.) Moreover, unlike in *Allen*, time was not of the essence here. Defendant had several weeks between the transaction and the grand jury hearing to further corroborate the CI's identification but chose not to do so. Jones had not provided substantial supporting evidence that the CI was shown to be reliable and would thus need the CI's information corroborated. *See United States v. Dyer*, 580 F.3d 386, 392 (6th Cir. 2009) ("when no substantial supporting evidence exists . . . as to the informant's reliability . . . courts require substantial independent police corroboration; *cf. Snow v. Nelson*, No. 1:14-CV-39, 2015 WL 1221618, at *5 (S.D. Ohio Mar. 17, 2015) (officer's testimony to the grand jury could not reasonably have been considered false testimony after looking at the totality of the circumstances: "a reliable informant with firsthand knowledge of [the suspect] and his activities, his positive identification of Plaintiff as [the suspect], and corroboration of his information by subsequent events").

Viewing the evidence in the light most favorable to Plaintiff, Jones has failed to establish that he is entitled to qualified immunity. Further, a genuine issue of material fact exists as to whether Defendant recklessly provided false testimony to the grand jury as to the identity of the suspect. As such, his motion for summary judgment on this claim is DENIED.

---

[4] Although Defendant testified at his deposition that an officer from another agency informed him that the CI had assisted with previous convictions, he was unable "to give . . . a figure" or reference any. (D.E. 30-3 at 15.) The CI was the only informant used in May of 2013, but Jones did not provide any specifics about how many indictments resulted during this time other than Plaintiff's. (*Id.* at 16.) At one point, Defendant stated approximately twenty to thirty suspects were presented to the grand jury after the entire operation ended, but it is unclear from the record if other CIs were used. (*Id.* at 18.) Jones testified that the sting in which Plaintiff was arrested lasted between two and four months. (*Id.* at 11.)

### B. Malicious Prosecution Claim Under Tennessee Law

In addition to her federal claim of malicious prosecution, Sanders alleges a similar violation under Tennessee state law. This allegation would typically confer supplemental jurisdiction in this Court, as it arises out of the same set of facts as Plaintiff's § 1983 claims. *See* 28 U.S.C. § 1367(a). However, "district courts have 'broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims,'" even if jurisdiction would otherwise be proper pursuant to § 1367(a). *See Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996), *amended on denial of reh'g*, 1998 WL 117980 (6th Cir. Jan. 15, 1998)); *Alexander v. Byrd*, No. 14-1022, 2014 WL 5449626, at *8 (W.D. Tenn. Oct. 24, 2014). Under § 1367(c), a district court may decline to exercise supplement jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Neither party addressed the issue of whether this Court should exercise supplemental jurisdiction over the state law claim. The Court will nevertheless examine the jurisdictional basis. *See Spencer v. Stork*, 513 F. App'x 557, 558 (6th Cir. 2013); *see Alexander*, 2014 WL 5449626, at *10 (examining whether the court should exercise supplement jurisdiction over the state law claim for risk of jury confusion).

Section 1367(c)(4), which permits declining jurisdiction in "exceptional circumstances," applies to Plaintiff's state claim of malicious prosecution. Courts and commentators have

recognized that "[t]he potential for jury confusion can be a sufficiently compelling reason for declining jurisdiction" under § 1367(c)(4). *Alexander*, 2014 WL 5449626, at *10 (quoting *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315 (E. D. Mich. 1994)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966) (noting, before the enactment of § 1367, that the "likelihood of jury confusion in treating divergent legal theories of relief [may] justify separating state and federal claims for trial," in which case "jurisdiction should ordinarily be refused"); 13D Charles Alan Wright, et al., *Federal Practice & Procedure: Jurisdiction* § 3567.3 (3d ed. 2014) ("The possibility of jury confusion might constitute an exceptional circumstance that could present a compelling reason for declining supplemental jurisdiction."). Where "the advantages to be gained by trying . . . claims together are outweighed by the potential for confusion of the issues by the jury," it is judicious for a district court to decline exercising supplemental jurisdiction. *Alexander*, 2014 WL 5449626, at *10 (quoting *Padilla*, 867 F. Supp. at 1316-17).

In *Alexander*, the district court declined to exercise supplement jurisdiction under § 1367(c)(4) where there were concerns of "different standards for . . . liability in the state and federal claims [that] would likely mislead a jury." *Id.* at *11. The court reasoned that "[t]rying the supplemental claims along with the federal claims . . . would run a heightened risk that the jury would apply an incorrect legal standard to some causes of action." Specifically, it noted the following differences between the state and federal standards for malicious prosecution:

> the mental state for malicious prosecution can be established by showing "that the accuser was motivated by . . . a primary purpose other than that of bringing the offender to justice." *Warren v. Columbia/HCA Healthcare Corp.*, M2000–02579–COA–R3CV, 2002 WL 554417, at *2 (Tenn. Ct. App. Apr. 15, 2002) (quoting *Sullivan v. Young*, 678 S.W.2d 906, 911 (Tenn. Ct. App.1984)) (internal quotation marks omitted). Under the Fourth Amendment, however, a showing of this type of subjective intent cannot establish an element of Plaintiff's claim; only "objective reasonableness" is at issue. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014); *Sheffey v. City of Covington*, 564 F. App'x 783, 789 (6th Cir.2014) (noting that Fourth

Amendment claims use an "objective-reasonableness test, which requires . . . weigh[ing] the nature and quality of the force used against the countervailing governmental interests at stake."). When a jury is asked to make both objective and subjective inquiries, error becomes more probable. *See Padilla*, 867 F. Supp. at 1316 ("[T]he standard for the § 1983 suit is objective reasonableness, while the standard for the state assault and battery claim is subjective reasonableness. A jury could not be expected to understand and to apply the two different standards of reasonableness in the same case."). In this case, the circumstances present a scenario, when taken as a whole, where jury confusion is particularly likely.

*Id.*

In the instant matter, the jury would be confronted with the task of being asked to make objective and subjective inquiries if given both the federal and state claims of malicious prosecution. As jury confusion is "particularly likely" in a scenario such as this and "error becomes more probable," the Court will decline to exercise its supplement jurisdiction over Plaintiff's state law claim. *See id.* Thus, this claim is DISMISSED without prejudice.

C. Section 1983 Claims For False Arrest and Imprisonment and State Law Claims for False Arrest and Imprisonment

In her response to Defendant's motion for summary judgment, Plaintiff conceded "that the state law false imprisonment claim and the Section 1983 claims for false arrest and imprisonment should be dismissed due to the existence of legal process to arrest the Plaintiff." (D.E. 30-1 at 19.) Although Plaintiff did not also specify she conceded her state law claim for false arrest, the Court assumes she intended as much as she did not address this issue. Therefore, these claims are DISMISSED.

IV. Conclusion

Based on the foregoing, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's state law claims and § 1983 claims for false arrest and imprisonment are DISMISSED. Defendant's motion for summary judgment on Plaintiff's

federal malicious prosecution claim is DENIED, however, Sanders' state law claim of malicious prosecution is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 24th day of November 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE